UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

DONALD TURNER

CIVIL ACTION

NO. 24-2439

VERSUS

COX OPERATING, LLC,                 JUDGE JANE TRICHE

COX OIL OFFSHORE,                    MILAZZO

LLC, GOL, LLC and GULF              MAGISTRATE JUDGE

OFFSHORE LOGISTICS, LLC             MICHAEL NORTH

*************************************************

Videotaped deposition of DONALD RAY
TURNER, JR., 419 Adams Street, Morgan City,
Louisiana 70380, taken in the offices of BLAKE
JONES LAW FIRM, 701 Poydras Street, Suite 4100,
New Orleans, Louisiana 70130, on Wednesday, August
20, 2025, commencing at 10:00 a.m.

Perrien Proceedings

Exhibit A

Donald Ray Turner, Jr.                          8/20/2025

Q.    Okay, Donald.  We're up to your time starting at Crosby.  So you apply to work there as a B operator; is that right?

A.    Yes, ma'am.

Q.    Okay.  And I know we're here about an incident that occurred in November 2023.  You had been with Crosby since about April 2023; is that correct?

A.    Yes.

Q.    So what is that?  April, May, June, July, August, September, October, November.  Six or seven months with Crosby?

A.    Yes.

Q.    Does that sound right?

A.    Yes.

Q.    Okay.  I know this happened or you're saying this happened on -- Well, do you remember the name of the platform?

A.    Grand Isle 43 AA.

Q.    Grand Isle 43 A?

A.    AA.

Q.    And that platform was owned and operated by --

A.    Cox.

Q.    Yes.

Exhibit A

Donald Ray Turner, Jr.                           8/20/2025

documents.  And then we will kind of go through this.  Well, actually, before I do, you are saying the basket came down.  Did you fall off the basket?

A.    No, ma'am.

Q.    Were your arms still, like, wrapped into the ropes?

A.    Yeah.

Q.    So when it came down, you stepped off the basket like normal?

A.    No.  As the basket is coming down, I do as I'm practiced and told to do, leave one foot extended out as you get closer.  Once you get closer you have one foot extended out.  I come down.  As I'm coming down, the boat must have went down, it come up, and it met (indicating).  And at that point --

Q.    So you're more describing like the vessel rose up on a swell or something?

A.    Right.  Correct.  And he also came down pretty hard.

Q.    Okay.  I mean, you realize the vessel is going up and down at --

A.    Yes, I realize that.

Q.    And your training is that this is a

Exhibit A

Donald Ray Turner, Jr.                          8/20/2025

dynamic environment, right?

A.   True.

Q.   That's why you have one foot off, so that you can get off really fast, right?

A.   Yes.

Q.   Okay.  So you're saying it's some combination of the vessel coming up on a swell and the basket coming down, what, too fast?

A.   Yes.

Q.   Okay.  You stepped off, though; you don't fall off?

A.   Yes.  You leave one foot down.  Some do, some don't, but I do.  And as you plant, you get planted, you're not supposed to hit very hard. You're just planting, just get your stuff, and move on.

Q.   Okay.  I'm just trying to understand. Like, you didn't fall off, you didn't hit the ground?

A.   No.

Q.   No part of your body hit the deck of the vessel?

A.   No.

Q.   Your feet --

A.   Other than my feet.

Exhibit A

Donald Ray Turner, Jr.                                    8/20/2025

out this paperwork, you signed it, agreeing to

abide by these rules, understanding these rules.

When you did that, did you get some impression

that you could not use stop work authority on

Grand Isle 43?

     A.   I just -- I didn't get that impression

initially.  No.

     Q.   You just have your pre-existing

impressions?

     A.   Correct.

     Q.   Okay.  Before we go through the rest of

this paperwork, I just want to make it clear here

that you agree with me, that you never reported

any incident or injury to anyone with Cox?

     A.   I wasn't employed by Cox.  I was

employed with Crosby.

     Q.   Yes.  But you never -- There were people

employed by Cox on your platform, including

Byron?

     A.   Uh-huh (affirmatively).  But we got on

the boat.  We were no longer on the platform.

     Q.   Did you tell Byron, the Cox PIC on Grand

Isle 43, that you just got hurt, you hurt your

back on that transfer?

     A.   No, I did not.

Exhibit A

Donald Ray Turner, Jr.                                      8/20/2025

Q.    Okay.  You also did not report your incident or injury to your back to anyone with Crosby?

A.    Not at the time, no.

Q.    When was the first time you remember reporting something to Crosby?

A.    It was the next day.

Q.    So the transfer happened on a Thursday, right?

A.    Uh-huh (affirmatively).

Q.    You said that you got stuck there, kind of; you were supposed to leave Wednesday?

A.    Yeah.

Q.    You left the platform on a Thursday. You reported that you hurt your back to someone with Crosby on Friday?

A.    Yes.  I wind up talking to someone Friday.

Q.    With Crosby?

A.    Yes.  Someone from over there.  Yes.  I don't know who it was.  It might have been Megan. I don't know who it was.

Q.    Who else -- If it wasn't Megan, who else would you talk to from Crosby to report something like that?

Exhibit A

Donald Ray Turner, Jr.                                    8/20/2025

A.   Uh-huh (affirmatively).

Q.   Yes?

A.   Yes.

Q.   You were literally, like, walking off the vessel?

A.   Walking off the vessel.  I'm in the rocks now, I'm on the ground now.

Q.   And she calls you?

A.   Right.

Q.   And what did she say?

A.   She said that they didn't want me over there or something.

Q.   Who's "they" and where is "there"?

A.   Grand Isle 43 didn't want me.

Q.   Cox?

A.   Right.

Q.   What did you say?

A.   I don't remember what I said to her.  I didn't -- I knew not to talk to her about it.  I wanted to get legal consultation.  That's all.

Q.   So you had already, in your mind, hurt your back, but you didn't tell Megan?

A.   I didn't in my mind hurt my back.  The incident occurred, and my back was hurting.

Q.   The incident occurred, and your back was

Perrien Proceedings

Exhibit A

Donald Ray Turner, Jr.                                    8/20/2025

hurting.  How is that different from saying you hurt your back?  I'm trying to understand what you're hearing in that question.

A.    I didn't hurt my back, ma'am.  The incident, the basket (indicating).

Q.    So Megan called you.  You had never reported that you thought you hurt your back -- you thought the basket hurt your back, however you want me to ask the question?

A.    Right.  I never told that to Megan, because at this point I needed legal consultation.

Q.    In all of your years working offshore, were you aware of the fact that if an incident occurs you must immediately report it?

A.    Yes.

Q.    Because when you report it, then paperwork gets generated.  Someone does an investigation.  They get a statement.  They get a statement from you.  They get a statement from the crane operator.  All of these things can happen.  And we all know it happened.  But you didn't do that here?

        MR. WHITMORE:

                Argumentative.  Objection.

Exhibit A

Donald Ray Turner, Jr.                                    8/20/2025

Argumentative.

Q. You can answer.

A. Say that again.

MR. WHITMORE:

I believe it's asked and answered.

Q. You didn't answer the question.

MR. WHITMORE:

You're being argumentative.

MS. SHIELDS:

No. You can state your objection.
But he still has to answer the question.

A. I did. That's what he's saying. I answered it.

Q. No, I didn't --

MS. SHIELDS:

Did he give an answer to the actual question I just asked?

A. Ask the question again, ma'am.

Q. Well, let's go --

MR. WHITMORE:

You asked him if he reported it.

MS. SHIELDS:

Yeah.

Q. Did you report it?

A. I reported it to who I needed to report

Exhibit A

Donald Ray Turner, Jr.                                    8/20/2025

it to.  Yes.

Q.  A lawyer?

A.  Yes.

Q.  A lawyer?

A.  Yes.

Q.  Okay.  So, as we sit here today, we all agree you didn't report it to anyone on the vessel, GOL vessel, you didn't report it --

A.  I just told one person, who was not my PIC, just a random -- I just told them that, I think my back -- I think my -- I must have -- I think I might have hurt my back, getting off that -- By me saying, I might have hurt my back, not saying that I did it, I'm saying from the transfer.  When dealing with smaller companies, it's probably in the best interest to go to an outside source.

Q.  Okay.

A.  If this was Anadarko or something like that, then, yes.  I would report it and go through that motion.

Q.  So you're saying there was something about the fact that it happened on a Cox platform working for Crosby that made you feel like you couldn't report it?

Exhibit A

Donald Ray Turner, Jr.                          8/20/2025

knowingly put yourself in an unsafe condition?

A.   Yes, I did.

Q.   Okay.  And no particular person from Cox made you do that?

A.   I mean, if I would have said, Hey, we need to stay here, guys, I would have got fired.

Q.   We don't know, because you didn't do that, right?

A.   I understand.  But I would have got fired.

Q.   The only two people you talked about this on the boat with -- well, you mentioned what Byron said, and then you mentioned that other guy, when you were smoking a cigarette.  Was that the only two?

A.   Yes.

Q.   Okay.  Is anybody going to say they saw you kind of like hobbling or struggling to get to your truck or anything like that, or did you appear normal?

A.   I appeared normal.  I didn't -- You know, like I said, it didn't hit me that hard when I was smoking a cigarette.  It just started, it was coming, coming, coming, coming.

Q.   You're not saying, are you, that, like,

Exhibit A

Donald Ray Turner, Jr.                               8/20/2025

the vessel was, like, drifting away or something when this is happening, right?  You're saying it came up on a swell?

A.   It came up on a swell, but it was doing all kind of stuff.  It was drifting and staying in one spot, backing up.  It always drift.

Q.   But I'm talking about during your transfer.  Are you making the allegation that the vessel was not holding steady --

A.   Swell.

Q.   -- and that somehow --

A.   The swell.  It wasn't a drift.  It was more of the swell.

Q.   So the vessel is just reacting to the sea conditions?

A.   Correct.

Q.   Okay.  And you agree with me there's nothing a vessel captain can do if his vessel is just riding up and down on the waves, right?

A.   He can say, Hey, it's not safe.  He can stop it, and the PIC can stop it.

Q.   But we just described multiple transfers that went safely before yours, right?

A.   Correct.

Q.   So does that suggest to you that the

Exhibit A