**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **DONALD TURNER** | **CIVIL ACTION** |
| **VERSUS** | **NO: 24-02439** |
| **COX OPERATING, LLC ET AL.** | **SECTION: "H"** |

## ORDER AND REASONS

Before the Court is Defendant's Motion for Summary Judgment (Doc. 46). For the reasons set forth herein, the Motion is **GRANTED.**

## BACKGROUND

### I. Factual Background

Plaintiff Donald Turner brings claims based on personal injuries he allegedly sustained while working as a production operator for C&D Production Specialist Co., Inc. d/b/a Crosby Energy Services, Inc. ("Crosby"). Turner was assigned to an oil and gas platform in Grand Isle Block 43, located off the coast of Louisiana, which was owned and operated by Defendant, Cox Operating, LLC and Cox Oil Offshore, LLC (collectively, "Cox"). Turner alleges that on November 16, 2023, he was injured while being transported from Cox's platform to the deck of the M/V GOL LIGHTNING ("GOL LIGHTNING"), a vessel owned and operated by Defendant REC Marine Logistics, LLC ("REC Marine"). Turner testified that during the personnel basket transfer, the GOL

LIGHTNING rose on a swell at the same moment the basket was being lowered, and that the basket "came down pretty hard."[1] He alleges that as a result of the physical impact of the basket onto the deck, he sustained "severe and disabling injuries," including injuries to his back.[2]

## II. Procedural Background

In the Complaint, Turner invokes this Court's admiralty jurisdiction under 28 U.S.C. § 1333 and designates his claims as admiralty and maritime pursuant to Federal Rule of Civil Procedure 9(h).[3] The Complaint further invokes 43 U.S.C. § 1331 *et seq.*, the Outer Continental Shelf Lands Act ("OCSLA").[4] Turner brings claims against Cox as owner and operator of the platform and REC Marine as owner and operator of the vessel.

On June 8, 2026, Cox filed the instant Motion for Summary Judgment on the basis that Cox is statutorily immune from tort liability under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901 *et seq*. Turner opposes.[5]

On July 28, 2026, Cox and REC Marine jointly filed a motion for summary judgment on the basis that the record evidence fails to establish that any accident occurred on November 16, 2023, or, alternatively, that either Defendant was at fault.[6] Because a ruling in Cox's favor on the instant Motion would bar Turner's tort claims against Cox, the Court will address it here first.

---

[1] Doc. 58-2 at 2.
[2] Doc. 20 at 3 (Second Amended Complaint).
[3] Doc. 20 at 1.
[4] *Id.* at 2.
[5] Doc. 53.
[6] Doc. 55.

## LEGAL STANDARD

### I. Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[7]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[8] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[9] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[10] "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[11] "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the

---

[7] Sherman v. Hallbauer, 455 F.2d 1236, 1241 (5th Cir. 1972).

[8] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 532 (5th Cir. 1997).

[9] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).

[10] Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

[11] Johnson v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).

necessary facts."[12] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[13]

## II. Outer Continental Shelf Lands Act ("OCSLA")

The Court's jurisdiction in this case arises pursuant to the OCSLA.[14] "OCSLA extends federal question jurisdiction over cases 'arising out of, or in connection with' any operation involving the 'exploration, development, or production' of minerals on the Outer Continental Shelf ("OCS")."[15] Additionally, "OCSLA defines the body of law that governs the OCS."[16] "All law applicable to the OCS is federal law, but to fill the substantial 'gaps' in the coverage of federal law, OCSLA borrows the 'applicable and not inconsistent' laws of the adjacent States as surrogate federal law."[17]

OCSLA further provides that "[w]ith respect to disability . . . of an employee resulting from any injury occurring as the result of operations conducted on the [OCS] for the purpose of . . . removing . . . the natural resources . . . of the [OCS], compensation shall be payable under" the

---

[12] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).

[13] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

[14] The Fifth Circuit employs a "but for" test to determine whether a plaintiff's claims arise under the OCSLA. Gannard v. Island Operating Co., No. 6:23-CV-00993, 2026 WL 1662782, at *2 (W.D. La. June 9, 2026) (citing Barker v. Hercules Offshore, Inc., 713 F.3d 208, 213 (5th Cir. 2013)). "As this Court and others have found, tort actions resulting from personnel basket transfers arise under OCSLA." Harding v. C-Dive, LLC, No. 24-2814, 2026 WL 2321357, at *3 (E.D. La. Aug. 11, 2026) (citation modified) (citing Hicks v. BP Expl. & Prod., 308 F. Supp. 3d 878, 885 (E.D. La. 2018) (collecting cases)). The Court finds that the "but for" test is satisfied.

[15] Kennedy v. Shell USA, Inc., No. 22-4591, 2024 WL 2863381, at *3 (E.D. La. June 5, 2024) (quoting 43 U.S.C. § 1349(b)(1)).

[16] *Id.*

[17] Willis v. Barry Graham Oil Serv. LLC, 636 F. Supp. 3d 684, 691 (W.D. La. Oct. 20, 2022) (quoting Gulf Offshore Co. v. Mobil Oil Corp., 453 U.S. 473, 479 (1981)).

LHWCA.[18] In turn, under the LHWCA, employees are precluded from bringing tort actions against their employers, and recovery is limited to certain statutorily prescribed compensation benefits.[19] Thus, if the LHWCA is applicable under the OCSLA, an employee's exclusive remedy against his employer for a work-related injury is the LHWCA.[20]

## LAW AND ANALYSIS

Cox argues that it is statutorily immune from tort liability because Turner was Cox's "borrowed employee" within the meaning of the LHWCA.[21] Turner disputes that he was a borrowed employee but argues that alternatively, even assuming borrowed employee status, the LHWCA does not apply because Cox did not control the operation giving rise to his injuries. The Court addresses each argument in turn.

### I. Whether Turner Was Cox's Borrowed Employee

"The issue of borrowed employee status is a matter of law for the district court to determine, but some cases involve factual disputes on the issue of borrowed employee status and require findings by a fact-finder."[22] In *Ruiz v.*

---

[18] 43 U.S.C. § 1333(b).

[19] 33 U.S.C. § 905(a); *see also* Sylvester v. Talos Energy Offshore LLC, No. 22-5192, 2024 WL 4043842, at *2 (W.D. La. Sept. 3, 2024) (citing Melancon v. Amoco Prod., 834 F.2d 1238, 1243–1244 (5th Cir. 1988)).

[20] Raicevic v. Fieldwood Energy, L.L.C., 979 F.3d 1027, 1031 (5th Cir. 2020) (first citing 43 U.S.C. § 1333(a)(1) and (b); and then citing 33 U.S.C. § 905(a)).

[21] "Because a borrowing employer enjoys the same protection as a nominal employer, a 'borrowed employee' . . . is also barred from suing the borrowing employer for anything more than workers' compensation benefits." *Sylvester*, 2024 WL 4043842, at *2.

[22] Brown v. Union Oil Co. of Cal., 984 F.2d 674, 677 (5th Cir. 1993) (citation modified) (citing *Melancon*, 834 F.2d at 1245 n.13).

*Shell Oil Co.*, the Fifth Circuit established a nine-factor test to determine whether an individual is a "borrowed employee":

> (1) Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation?
> (2) Whose work is being performed?
> (3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?
> (4) Did the employee acquiesce in the new work situation?
> (5) Did the original employer terminate his relationship with the employee?
> (6) Who furnished tools and place for performance?
> (7) Was the new employment over a considerable length of time?
> (8) Who had the right to discharge the employee?
> (9) Who had the obligation to pay the employee?[23]

While "[n]o single factor, or combination of them, is determinative," often, "the Fifth Circuit has considered the first factor—control—to be the central factor."[24]

Here, Turner concedes that the second, sixth, and seventh factors are satisfied. The Court will therefore only address the remaining factors.[25]

***i. Control of the work***

The first factor considers whether the nominal employer had the power to "control and direct" the nominal employee.[26] In considering this factor, "a careful distinction must be made 'between authoritative direction and control,

[23] *Sylvester,* 2024 WL 4043842*,* at *3 (citing Ruiz v. Shell Oil Co., 413 F.2d 310 (5th Cir. 1969)).

[24] *Id.* (citing *Melancon*, 834 F.2d at 1245); *see also Brown*, 984 F.2d at 676–77.

[25] *See* Doc. 53 at 12 ("Cox is correct that some *Ruiz* factors favor its position, specifically where Mr. Turner performed production work on Cox's platform, using Cox's equipment, as part of Cox's core business, for the entirety of his seven-month employment with Crosby.").

[26] *Ruiz*, 413 F.2d at 313.

and mere suggestion as to details or the necessary co-operation, where the work furnished is part of a larger undertaking."[27] "'Co-operation,' as opposed to 'subordination,' is insufficient 'to create an employment relationship.'"[28]

Here, the undisputed evidence reveals that Turner took orders from Cox's "person-in-charge," Byron Sigler, who told him what work to do and when and where to do it.[29] Crosby gave no instruction to Turner while he was on the platform. Indeed, the only contact Turner had with Crosby concerned issues such as "insurance," "holiday pay," or assignment changes.[30] Additionally, Cox provided Turner with food and transportation while on his hitch. Contrary to what Turner argues, the fact that he had specialized skills or that he did not require detailed instructions regarding how to perform the work do not bar a finding of borrowed employee status.[31]

The Court finds that this factor weighs in favor of borrowed employee status.

***ii. Meeting of the minds***

"The third factor asks whether an agreement or understanding existed between the original and the borrowing employer."[32] Turner points out that section 6.0 of the Master Services Agreement ("MSA") entered into between

---

[27] *Id.*

[28] Mosley v. Wood Grp. PSN, Inc., 760 F. App'x 352, 359 (5th Cir. 2019) (quoting *Ruiz*, 413 F.2d at 313).

[29] *See* Doc. 46-2 at 14, 19.

[30] *See* Doc. 46-3 at 2.

[31] *See Mosley*, 760 F. App'x at 360 (citing *Melancon*, 834 F.2d at 1245); *see also* Harper v. W&T Offshore Inc., No. 24-1101, 2024 WL 5202146, at *4 (E.D. La. Dec. 23, 2024) (holding that "even accepting Harper's contention that he did not require or receive daily instructions and that he was not closely supervised, a finding of borrowed employee status is not barred").

[32] Capps v. N.L. Baroid Indus., Inc., 784 F.2d 615, 617 (5th Cir. 1986).

Crosby and Cox provides that Crosby "shall be deemed an Independent Contractor" in the performance of services; that "[i]t is the understanding and intention of the parties . . . that no relationship of master and servant shall exist between" Crosby and Cox; and further, that Cox "shall designate the Services it desires to be performed and the ultimate results to be obtained, but shall leave to Contractor the methods and details of performance," with Cox "being interested only in the results obtained, and having no control over the manner and method of performance."[33]

As an initial matter, although section 6.0 purports to prevent borrowed employee status, the "parties to a contract cannot automatically prevent a legal status like 'borrowed employee' from arising merely by saying in a provision in their contract that it cannot arise."[34]

Cox contends that the MSA's "routine independent contractor provision" in section 6.0 does not prevent a finding that the third factor is satisfied because: (1) section 6.0 also contains a provision reserving Cox's right to assert "any borrowed employer or statutory employer defense"; (2) section 3.1 of the MSA further provides that services will be rendered in accordance with, among other things, "any specifications or instructions" of Cox; and (3) it was

---

[33] Doc. 53-4 at 3.

[34] Pierce v. BP Am. Prod. Co., 606 F. Supp. 3d 320, 330 (E.D. La. June 8, 2022) (Morgan, J.) (quoting *Melancon*, 834 F.2d at 1245). While the MSA may be relevant to the third factor (whether there was a meeting of the minds), it does not move the needle with respect to the first factor, contrary to what Turner argues. *See Harper*, 2024 WL 5202146, at *3–5 (considering the master services agreement only in assessing the third factor); *see also Mosley*, 760 F. App'x at 359–61 (same). As in *Mosley*, as explained *infra*, the Court finds that the MSA is ambiguous and does not foreclose a finding that Turner was a borrowed employee. *See Mosley*, 760 F. App'x at 361.

understood that Turner worked for Cox.[35] Turner counters that the plain language of the Independent Contractor provision controls.

"The reality at the worksite and the parties' actions in carrying out a contract . . . can impliedly modify, alter, or waive express contract provisions."[36] Following that reasoning, in *Melancon v. Amoco Production Co.*, the Fifth Circuit held that the third factor was satisfied where the plaintiff understood that he would be taking instructions from the nominal employer, notwithstanding the MSA's provisions to the contrary.[37] On the other hand, in *Mosley*, the Fifth Circuit subsequently affirmed the district court's finding that genuine issues of material fact existed where the parties appeared to modify the MSA's independent contractor provision, and the MSA required the plaintiff's employer to obtain borrowed servant insurance.[38] And in *Raicevic v. Fieldwood Energy*, the Fifth Circuit reviewed a jury's finding that the plaintiff was a borrowed employee and affirmed that the existence of a written agreement does not automatically prevent borrowed employee status from arising.[39] Although the jury found that there existed a written contract, it did not find that the contract was modified.[40] Nevertheless, the court found, without deciding that issue, that the evidence that the plaintiff took

[35] Doc. 46-4 at 2, 3.

[36] *Melancon*, 834 F.2d at 1245 (citing McDonough Marine Serv., Inc. v. M/V Royal Street, 465 F. Supp. 928, 935 (E.D. La. 1979), *aff'd* 608 F.2d 203 (5th Cir. 1979)).

[37] *Id.*

[38] *Mosley*, 760 F. App'x at 361.

[39] *Raicevic*, 979 F.3d at 1033.

[40] *Id.*

instructions from the nominal employer was "enough to make this factor neutral."[41]

Here, considering the MSA's arguably conflicting provisions and the conduct of the parties, the Court finds that there exists a genuine issue of material fact regarding the third factor. "This fact issue does not preclude summary judgment, however, 'when the remaining factors clearly point to borrowed-employee status.'"[42]

***iii. Acquiescence***

The focus of the fourth factor—whether the employee acquiesced in the new work situation—"is whether the employee was aware of his work conditions and chose to continue working in them."[43] Courts have found that this factor is satisfied in a number of circumstances, including where the plaintiff: (1) attended safety meetings without objection;[44] (2) "slept and ate in [the nominal employer]'s field for a month prior to his accident";[45] (3) worked

---

[41] *Id.*

[42] *Mosley*, 760 F. App'x at 361 (quoting Billizon v. Conoco, Inc., 993 F.2d 104, 106 (5th Cir. 1993)); *Harper*, 2024 WL 5202146, at *5 (finding that, although the MSA created a genuine issue of material fact as to the third factor, summary judgment was warranted because the remaining eight factors weighed in favor of borrowed employee status); *cf.* Washington v. Fieldwood Energy LLC, No. 15-6615, 2018 WL 263230, at *2–4 (E.D. La. Jan. 2, 2018) (Milazzo, J.) (denying reconsideration of denial of summary judgment where the second factor weighed against borrowed employee status and the MSA created a genuine issue of material fact as to the third factor).

[43] Todd v. Cameron Int'l Corp., No. 14-736, 2016 WL 3748553, at *5 (W.D. La. July 7, 2016) (citing *Brown*, 984 F.2d at 678); *see also Melancon*, 834 F.2d at 1246.

[44] *See* Tajonera v. Black Elk Energy Offshore Operations, L.L.C., No. 13-0366, 2014 WL 5113322, at *12 (E.D. La. Oct. 10, 2014) (Brown, J.); *see also* Fontenot v. Mobil Oil Expl. & Producing Se., Inc., 997 F.2d 881 (5th Cir. 1993).

[45] *Brown*, 984 F.2d at 678. The Court recognizes that length of time alone cannot be dispositive since that is separately considered under the seventh factor. Nevertheless, the Fifth Circuit has consistently found that the length of time a plaintiff works for the nominal employer without objection is relevant. *See id.*; *see also Mosley*, 760 F. App'x at 362. Even so,

for the same nominal employer for four years without objection;[46] and (4) "knew when he began to work . . . what his work conditions would be, and he made no complaint regarding these conditions."[47]

Here, Turner does not dispute that he worked exclusively on Cox-owned platforms for the entirety of his roughly seven-month employment with Crosby, that he voluntarily extended his time on Cox's platforms beyond his scheduled hitch (including at the time of the alleged incident), or that he did so without objection. Rather, he suggests, without citing legal support, that "acquiescence" equates to knowledge that he was giving up his right to sue. The Court disagrees. Accordingly, the fourth factor weighs in favor of borrowed employee status.

#### *iv. Termination of prior employment relationship*

Factor five, which considers whether the original employer terminated the relationship with the employee, "does not require a lending employer to sever completely its relationship with the employee, because such a requirement would effectively eliminate the 'borrowed employee' doctrine."[48] "The emphasis when considering this factor should focus on the lending employer's relationship with the employee while the borrowing occurs."[49]

---

the Fifth Circuit has found this factor satisfied where the plaintiff only worked for the nominal employer for one day. *See Capps*, 784 F.2d at 616 (holding that because the plaintiff worked for a company that loaned temporary employees, he knew he would be sent into new work situations and acquiesced to that fact); *but see Todd,* 2016 WL 3748553, at *5 n.4 (rejecting *Capps*'s rule that a loan employee always acquiesces to a new work situation and instead following the more lenient rule established by *Brown*).

[46] *See Brown*, 984 F.2d at 678 n.6 (collecting cases).

[47] *Melancon*, 834 F.2d at 1246.

[48] *Id.* (citing *Capps,* 784 F.2d at 617–18).

[49] *Id.* (quoting *Capps,* 784 F.2d at 617–18).

Unlike the second, sixth, and seventh factors, Turner does not affirmatively concede that this factor is satisfied. Instead, he "failed to brief this factor and has forfeited any argument that it weighs against borrowed employee status."[50] Nevertheless, the Court finds that this factor is satisfied because Crosby's control over Turner was "nominal at most" while he worked for Cox.[51]

***v. Right to discharge***

Under the eighth factor, the Court considers "who has the right to discharge the employee from the borrowing employer's services."[52] As Cox points out, both Turner and Hebert acknowledged that Cox possessed the ability to fire him from the contract and that it did so in this case. Turner nevertheless argues that this authority does not constitute "discharge" under *Ruiz* because Crosby alone could terminate his employment with Crosby. In support, Turner relies on the 1985 decision *West v. Kerr-McGee*, in which the

---

[50] *See Mosley*, 760 F. App'x at 362 (finding that the plaintiff had forfeited the argument for purposes of appeal) (citing *In re* Southmark Corp., 163 F.3d 925, 934 n.12 (5th Cir. 1999)).

[51] *See id.* In addressing factor nine, Turner contends that Crosby issued his paychecks, provided his LHWCA coverage, and maintained his personnel records. Even assuming Turner intends to argue that those facts support factor five, the record indicates that Crosby maintained little connection with Turner and therefore relinquished control. *Compare* U.S. Fire Ins. Co. v. Miller, 381 F.3d 385, 390 (5th Cir. 2004) (finding that the fifth factor favored borrowed employee status where the original employer issued the employee's paychecks but otherwise had no contact with him, and the borrowing employer furnished the employee an expense account and vehicle to perform his duties), *and* Fairley v. Murphy Expl. & Prod. Co., 58 F. Supp. 3d 641, 644 (E.D. La. 2014) (finding that the fifth factor favored borrowed employee status where the original employer's only connection to the plaintiff was paying his wages) (Marty, J.) *with* Mays v. Dir., OWCP, 938 F.3d 637, 645 (5th Cir. 2019) (finding that the fifth factor weighed against borrowed employee status where the original employer provided Longshore insurance and paid the employee's wages, but also provided his tools and equipment, supervised him daily, and moved him to its next job).

[52] *Mosley*, 760 F. App'x at 362 (citing *Capps*, 784 F.2d at 618).

Fifth Circuit reversed the district court's grant of summary judgment on borrowed employee status.[53] There, the court found factual disputes as to several *Ruiz* factors, and noted, among other things, that although the defendant "could dismiss [the plaintiff] from the platform, it could not fire him from his position with" his employer.[54]

Turner contends that under *West*, the ability to remove a contractor's employee from a worksite and "release" him "through the lending employer" is not the same as the right to discharge required under *Ruiz*.[55] Shortly after *West*, the Fifth Circuit directly examined the right-to-discharge factor in *Capps v. N.L. Baroid*.[56] There, although the nominal employer could not terminate the plaintiff's employment with his original employer, it could terminate the plaintiff's services with itself.[57] The court held that "this is the proper focus when considering who has the right to discharge the employee."[58]

Accordingly, *West* does not preclude a finding that the eighth factor favors borrowed employee status. Notably, the Fifth Circuit has continued to apply the rule articulated in *Capps*.[59] Because Cox had the right to terminate Turner from its services, it is immaterial that Cox could not terminate Turner's

[53] West v. Kerr-McGee Corp., 765 F.2d 526 (5th Cir. 1985).

[54] *Id.* at 531.

[55] Doc. 53.

[56] Capps v. N.L. Baroid-NL Indus., Inc., 784 F.2d 615 (5th Cir. 1986).

[57] *Id.* at 618.

[58] *Id.* (citing Hebron v. Union Oil Co. of Cal., 634 F.2d 245 (5th Cir. Unit A Jan. 1981) (per curiam)).

[59] *See, e.g.*, *Raicevic*, 979 F.3d at 1033–34 (citing *Capps*, 784 F.2d at 618); *see also Mays*, 938 F.3d at 646 (citing *Capps* and finding that the eighth factor was satisfied where the nominal employer could remove the plaintiff from its premises).

employment with Crosby. The eighth factor therefore weighs in favor of borrowed employee status.

### *vi. Obligation to pay*

"The ninth factor asks who had the obligation to pay" the employee.[60] "The determining factor in who had the obligation to pay the borrowed employee is who furnished the funds from which the borrowed employee was paid."[61] While Turner does not dispute that Crosby billed Cox and that he was ultimately paid pursuant to the MSA, he argues that the ninth factor is not met because Crosby "issued [his] paychecks, provided his LHWCA coverage, maintained his personnel records, and remained legally and solely responsible for his pay as employer."[62] But it is well-settled that the focus is on where the funds originally came from—not on who ultimately paid Turner.[63] Turner cites no authority for his assertion that the fact that Cox "furnished the funds from which Turner's wages were paid . . . establishes only that Cox funded the commercial services contract, not that Cox carried the employment obligation to Mr. Turner directly."[64] Because Cox paid Crosby for Turner's work, and in turn, Crosby paid Turner, the ninth factor weighs in favor of borrowed employee status.[65]

---

[60] *Mosley*, 760 F. App'x at 362 (citing *Capps*, 784 F.2d at 618).

[61] Hotard v. Devon Energy Corp., L.P., No. 07-1476, 2008 WL 2228922, at *5 (W.D. La. May 29, 2008) (citing *Melancon*, 834 F.2d at 1246).

[62] Doc. 53 at 8.

[63] *See Raicevic*, 979 F.3d at 1034 (citing *Capps*, 784 F.2d at 618).

[64] Doc. 53 at 8.

[65] *See Raicevic*, 979 F.3d at 1034 ("Here, Fieldwood paid Waukesha Pearce for Raicevic's work, then Waukesha Pearce paid Raicevic. That is enough to skew the factor in Fieldwood's favor." (citing *Melancon*, 834 F.2d at 1246)).

In sum, the Court finds that all but factor three of the *Ruiz* factors weigh in favor of borrowed employee status. In *Mosley*, the court affirmed the district court's granting of summary judgment where seven of the nine factors weighed in favor of borrowed employee status, one was neutral (factor seven), and one involved an unresolved fact issue (factor three).[66] The court held that even assuming the third factor weighed in favor of the plaintiff, the record established that the plaintiff was a borrowed employee.[67] Likewise, here, even assuming factor three weighs in Turner's favor, the Court finds that Turner was Cox's borrowed employee under the LHWCA.

**II. Whether the LHWCA Does Not Apply Notwithstanding That "Borrowed Employee" Status Is Satisfied**

Finally, Turner argues that even assuming Cox "could establish borrowed employee status," Cox is "not automatically immunize[d]" from liability for "a separate maritime transfer operation that it did not conduct or control."[68] In support, Turner relies on the Fifth Circuit's decision in *Hebron v. Union Oil Co. of California*.[69] There, as here, the plaintiff sued the platform owner (Union Oil) after being injured during a basket transfer between the platform and a vessel.[70] Although his argument is not entirely clear, Turner appears to assert that (1) under *Hebron*, *Ruiz*'s "control" factor requires Cox to have conducted the basket transfer and (2) because the basket transfer is

[66] *Mosley*, 760 F. App'x at 362.

[67] *Id.* at 362–63; *see also Harper*, 2024 WL 5202146, at *7 (granting summary judgment where only the third factor weighed against borrowed employee status).

[68] Doc. 53 at 12.

[69] 634 F.2d 245 (5th Cir. Unit A Jan. 1981).

[70] *Id.* at 246.

"maritime in nature," the LHWCA does not apply. Neither proposition follows from *Hebron*.

First, *Hebron* did not create a rule that *Ruiz*'s "control" factor is satisfied only where the borrowing employer directs the particular operation during which the injury occurs. Rather, the court found that the plaintiff was Union Oil's borrowed employee because, among other things, Union Oil "had the power to direct and supervise" the plaintiff and could "terminate his services."[71] The court further reasoned that the plaintiff "lived on and ate at Union Oil facilities and was taking orders from a Union Oil employee at the time of the accident."[72]

Second, *Hebron* directly contradicts Turner's position that because the transfer occurred on a vessel (and was thus "maritime" in nature), the LHWCA does not apply—because *Hebron* applied it in analogous circumstances.[73] And Turner cites no other authority supporting the assertion that the maritime nature of the operation giving rise to an injury renders the LHWCA inapplicable to an otherwise covered employee. Instead, whether the LHWCA applies by virtue of OCSLA turns on whether: (1) the injury "arise[s] out of, and occur[s] within the scope of," employment under the LHWCA; and (2) the injury is "sustained as the result of operations conducted on the OCS, under OCSLA's relevant provision."[74] Turner does not appear to dispute that these

[71] *Id.* at 247.
[72] *Id.*
[73] *See id.*
[74] Owensby & Kritikos, Inc. v. Director, OWCP, 997 F.3d 587, 592 (5th Cir. 2021) (first citing 33 U.S.C. § 902(2); then citing 43 U.S.C. § 1333(b)).

requirements are satisfied, and in any event, the Court finds that they are.[75] Accordingly, the maritime nature of the basket transfer does not, by itself, render the LHWCA inapplicable.[76] Turner's argument is rejected.

The Court therefore finds that summary judgment in favor of Cox is warranted.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Cox's Motion for Summary Judgment (Doc. 46) is **GRANTED.** Turner's claims against Cox are **DISMISSED WITH PREJUDICE.**

[75] Further, while OCSLA provides that, for purposes of the extension of the provisions of the LHWCA, "the term 'employee' does not include a master or member of a crew of any vessel," Turner does not argue that he was a master or member of a crew of any vessel. *See* 43 U.S.C. § 1333(b)(1).

[76] While Turner does not appear to contest jurisdiction, to the extent his reference to the maritime nature of the basket transfer is intended to challenge OCSLA jurisdiction, neither the application of maritime law nor the existence of admiralty jurisdiction displaces OCSLA's independent grant of federal-question jurisdiction. *See Barker*, 713 F.3d at 220–21 (holding that "the application of maritime law as the rule of decision does not displace OCSLA's grant of federal question jurisdiction"). To be sure, § 1333(a)(1) of OCSLA and substantive admiralty law constitute "alternative, not overlapping, regimes of federal law." *In re* Deepwater Horizon, 745 F.3d 157, 166 (5th Cir. 2014). Even so, OCSLA separately extends LHWCA coverage under § 1333(b). *See* Barger v. Petroleum Helicopters, Inc., 692 F.2d 337, 340 (5th Cir. 1982) (holding that, if the employee was covered by § 1333(b), recovery against his employer under general maritime law was barred "[e]ven if admiralty jurisdiction existed").

New Orleans, Louisiana this 29th day of September, 2026.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**