**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **DONALD TURNER** | **CIVIL ACTION** |
| **VERSUS** | **NO: 24-02439** |
| **COX OPERATING, LLC ET AL.** | **SECTION: "H"** |

## ORDER AND REASONS

Before the Court is Defendant REC Marine Logistics, LLC's Motion for Summary Judgment (Doc. 55). The Court previously granted this Motion and now assigns the following reasons.

## BACKGROUND

Plaintiff Donald Turner brings claims for personal injuries he allegedly sustained while working as a production operator for Crosby Energy Services, Inc. ("Crosby"). Turner was assigned to an oil and gas platform in Grand Isle Block 43, located off of the coast of Louisiana, which was owned and operated by Defendant Cox Operating, LLC and Cox Oil Offshore, LLC (collectively "Cox"). Turner alleges that on November 16, 2023, he sustained injuries while being transported by way of crane from Cox's platform to the deck of the M/V GOL LIGHTNING ("GOL LIGHTNING"), a vessel owned and operated by Defendant REC Marine Logistics, LLC ("REC"). During the personnel basket transfer, Turner alleges that the GOL LIGHTNING rose on a swell at the same

moment the basket was being lowered onto the deck, and that the crane operator "came down pretty hard."[1] Turner alleges that as a result of the physical impact of the basket onto the deck, he sustained "severe and disabling injuries," including injuries to his back.[2]

On September 29, 2026, the Court granted Cox's Motion for Summary Judgment on the basis that Turner's recovery against Cox is governed exclusively by the provisions of the Longshore and Harbor Workers' Compensation Act ("LHWCA") and that Cox is therefore statutorily immune from tort liability.[3] The Court dismissed all claims against Cox with prejudice. On July 28, 2026, Cox and REC jointly filed the instant Motion for Summary Judgment.[4] Turner opposed.[5] On October 6, 2026, the Court granted summary judgment in REC's favor for the following reasons.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[6]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws

[1] Doc. 58-2 at 2.
[2] Doc. 20 at 3.
[3] Doc. 69.
[4] Doc. 55.
[5] Doc. 58.
[6] Sherman v. Hallbauer, 455 F.2d 1236, 1241 (5th Cir. 1972).

all reasonable inferences in his favor.[7] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[8] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[9] "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[10] "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[11] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[12]

## LAW AND ARGUMENT

REC argues that the record evidence fails to establish either (1) that an accident occurred on November 16, 2023, or (2) that REC breached any duty in a manner that caused Turner's injury.

---

[7] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 532 (5th Cir. 1997).

[8] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).

[9] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

[10] Johnson v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).

[11] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).

[12] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

As a threshold issue, the Court must address jurisdiction. Jurisdiction in this case arises pursuant to § 1349(b)(1) of the Outer Continental Shelf Act, or OCSLA.[13] Once OCSLA jurisdiction is established, a court must ordinarily "turn to the OCSLA choice of law provision to ascertain whether state, federal, or maritime law applies to a particular case."[14] The Court, however, finds that for purposes of resolving the instant Motion, it need not decide the issue because "the elements to be established under either legal regime are so similar."[15] Both Louisiana law (the law of the adjacent state) and general maritime law require Turner to establish that the alleged incident occurred and that it was a result of REC's breach of a duty owed to Turner.[16]

## I. Whether a Genuine Issue of Material Fact Exists Regarding Whether an Accident Occurred

REC argues that Turner fails to present evidence that an accident occurred aside from his own "self-serving testimony" that he was injured after the personnel basket made a hard landing on the deck of the GOL

[13] *See* 43 U.S.C. § 1349(b)(1).

[14] *In re* Deepwater Horizon, 745 F.3d 157, 164 (5th Cir. 2014).

[15] Hardy v. Wood Grp. PSN, Inc., No. 6:13–cv–00775, 2014 WL 1664236, at *2 (W.D. La. Apr. 25, 2014) ("Hardy II") (concluding that "regardless of which body of law applies, whether an incident occurred as a result of the defendant's breach of a duty owed to the plaintiff is a threshold issue"); *see also* Gannard v. Island Operating Co., No. 6:23-CV-00993, 2026 WL 1662782, at *5 (W.D. La. June 9, 2026) (finding that issue of whether the vessel breached a duty that caused the plaintiff's injury could be decided regardless of whether Louisiana or general maritime law applied).

[16] *Hardy II*, 2014 WL 1664236, at *2. Here, while the parties appear to agree that maritime law applies to Turner's claims against REC, they do not analyze choice-of-law under OCSLA. Because the parties have not done what they "may not avoid," the Court must now address, without briefing, the choice-of-law issue. Harding v. C-Dive, LLC, No. 24-2814, 2026 WL 2321357, at *1 n.4 (E.D. La. Aug. 11, 2026) (Africk, J.) (alterations in original) (quoting Petrobras Am., Inc. v. Vicinay Cadenas, S.A., 815 F.3d 211, 217 (5th Cir.), *order clarified on reh'g*, 829 F.3d 770 (5th Cir. 2016)).

LIGHTNING.[17] The Fifth Circuit has recognized, however, that "a party's own testimony is often 'self-serving,' but a court do[es] not exclude it as incompetent for that reason alone."[18] "Under certain circumstances, the plaintiff's testimony—without more—is insufficient to create a genuine issue of material fact."[19] But "[t]estimony based on personal knowledge and containing factual assertions" often "suffices to create a fact issue, even if it is self-serving."[20]

REC argues that Turner's testimony alone is insufficient to preclude summary judgment because: (1) there is no record of an incident occurring on November 16, 2023; (2) Turner did not report the alleged incident to Cox or REC Marine at the time it occurred; and (3) both the crane operator involved in the transfer, Todd Dubois, and the captain of the GOL LIGHTNING, Travis Gordon, "have denied any knowledge of an incident occurring on the date in question."[21]

The Court disagrees. Turner testified from personal knowledge that the personnel basket made a hard landing on the deck of the GOL LIGHTNING and that he was injured in the process. Megan Hebert, Crosby's onshore supervisor for the Cox job, testified that once Turner returned to shore from the Cox job, he gave her "an explanation of what happened on the boat with

---

[17] Doc. 55-1 at 6.

[18] *Hardy II*, 2014 WL 1664236, at *3 (alterations in original) (quoting C.R. Pittman Const. Co. v. Nat'l Fire Ins. Co. of Hartford, 453 F. App'x 439, 443 (5th Cir. 2011)).

[19] *Id.*

[20] *Id.* (citing *C.R. Pittman*, 453 F. App'x at 443). Indeed, "characterizing a party's testimony as 'self serving' is not useful to the court. In a lawsuit, where each party is attempting to advance his own cause and protect his own interests, we are scarcely shocked when a party produces evidence or gives testimony that is 'self-serving.'" Dean v. Ford Motor Credit Co., 885 F.2d 300, 306 (5th Cir. 1989).

[21] Doc. 55-1 at 6.

the personnel basket."[22] Specifically, Turner reported "that the crane operator was placing the personnel basket on the boat and that they had a hard hit."[23] Moreover, while Dubois and Gordon testified that they did not recall the day in question, neither affirmatively testified that the alleged hard landing did not occur. Likewise, that an incident report was not generated does not necessarily refute Turner's account.[24]

REC emphasizes that Turner "only mentioned the alleged incident hours later, and only after" Hebert informed him "that his employment was being terminated."[25] Because the Court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment, the Court declines REC's invitation to infer from the timing of Turner's report that he fabricated the accident in response to losing his job.[26]

The Court finds that Turner's testimony is sufficient to create a factual dispute as to whether an accident occurred.

## II. Whether a Genuine Issue Exists Regarding REC's Negligence

The Court finds, nevertheless, that summary judgment in favor of REC is warranted. To establish a valid tort claim under general maritime law, a

---

[22] Doc. 58-5 at 4.

[23] *Id.* at 5.

[24] *See Hardy II*, 2014 WL 1664236, at *3 (finding that a genuine issue of material fact existed as to whether an accident occurred during a personnel-basket transfer because the plaintiff testified from personal knowledge, and reasoning that while "the vessel's captain testified in his deposition that he does not remember the day of the alleged accident at all," and "the crane operator could not specifically recall the subject basket transfer," the defendant presented no deposition testimony that refuted the plaintiff's "allegation that there was a rough basket landing").

[25] Doc. 55-7 at 2.

[26] United Healthcare Servs., Inc. v. Rossel, No. 3:21-cv-1547, 2024 WL 4451761, at *7 (N.D. Tex. July 23, 2024) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)).

plaintiff must show: "(1) that the defendant owed a duty to the plaintiff to use due care; (2) that the defendant breached that duty; (3) that the plaintiff suffered damages; and (4) that the breach of the duty proximately caused the plaintiff's injuries."[27] A vessel owner like REC owes its passengers "a duty to exercise reasonable care," which includes "the duty to provide safe means of ingress and egress."[28] Similarly, Louisiana's duty-risk analysis requires a plaintiff to prove that: (1) the defendant had a duty to conform his or her conduct to a specific standard of care; (2) the defendant breached that duty; (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) the plaintiff sustained actual damages.[29]

Here, the parties do not appear to dispute that REC owed Turner a duty of reasonable care in connection with his transfer to the vessel. Instead, they dispute whether REC breached that duty and, if so, whether the breach caused Turner's injuries.

REC argues that it cannot be liable because, during the transfer, the GOL LIGHTNING was rising up with the waves when it impacted the personnel basket. They point out that it is well-settled that a vessel's vertical

---

[27] *Hardy II*, 2014 WL 1664236, at *2 (citing Ates v. B & D Contracting, Inc., 487 F. App'x 201, 204 (5th Cir. 2012)).

[28] Hebert v. Specialized Env't Res. LLC, No. 12–0071, 2013 WL 1215443, at *4 (E.D. La. Mar. 25, 2013) (Feldman, J.) (collecting cases establishing "that unless altered by custom or contract, the duty to provide a safe means of ingress and egress lies with the vessel owner").

[29] *Hardy II*, 2014 WL 1664236, at *2 (citing Christy v. McCalla, 79 So. 3d 293, 299 (La. 12/6/11)).

movement is "ordinary, expected, and not the result of vessel negligence."[30] Thus, REC suggests, the only party who is possibly responsible is Crosby, the crane operator.[31] In support, REC relies on the District Court for the Western District of Louisiana's decision in *Hardy v. Wood Group, PSN, Inc.*[32] There, the court granted summary judgment in favor of the vessel owner, holding that it was "undisputed that a vessel is unable to control its vertical movement," and that "it is the responsibility of the crane operator to mitigate the risk of vertical vessel movement, which the vessel itself is powerless to control."[33]

Here too, the vessel was simply reacting to sea conditions at the time of the incident. Turner testified that:

> Q: You're not saying, are you, that, like, the vessel was, like, drifting away or something ·when this is happening, right? You're saying it came up on a swell?
> A: It came up on a swell, but it was doing all kind of stuff. It was drifting and staying in ·one spot, backing up. It always drift.
> Q: But I'm talking about during your transfer. Are you making the allegation that the ·vessel was not holding steady –
> A: Swell.
> Q: -- and that somehow --
> A: The swell. It wasn't a drift. It was more of the swell.
> Q: So the vessel is just reacting to the sea conditions?
> A: Correct.[34]

---

[30] Hardy v. Wood Grp. PSN, Inc., No. 6:13–cv–00775, 2014 WL 1652530 (W.D. La. Apr. 24, 2014) ("Hardy I"); *see also* Broussard v. Gulf Shore Logistics, LLC, No. 22-890, 2023 WL 2994777, at *3 (E.D. La. Apr. 18, 2023) (collecting cases).

[31] The Court notes that the evidence suggests that Cox controlled the operation of the basket transfer. However, for purposes of this motion, the Court need not decide whether Cox or Crosby was responsible for the crane operator.

[32] *Hardy I*, 2014 WL 1652530.

[33] *Hardy I*, 2014 WL 1652530, at *2.

[34] *Id.* at *5–6.

The courts in this jurisdiction have consistently held that a vessel does not breach any duty to a plaintiff merely because it moves vertically in response to wave action.[35] Accordingly, REC did not breach a duty by reacting to sea conditions.

Further, despite arguing otherwise, Turner has not presented any evidence that the GOL LIGHTNING was improperly positioned when the basket landed, that it was drifting, that the sea conditions were unsafe for transfer, or that it was understaffed. Moreover, Turner does not explain how any of these alleged failures by the vessel caused his injury.

Specifically, Turner argues that there is no affirmative evidence that the vessel was not drifting. He points out that Captain Gordon testified that it was his (and therefore REC's) duty during a basket transfer to "pretty much get the boat in a comfortable position" before telling the crane operator that "everything looks good" and to "lower the basket."[36] Turner argues therefore that "whether the GOL LIGHTNING was in a comfortable position when the signal was given for Turner's basket transfer is a disputed fact."[37] The Court disagrees. Turner identifies no evidence that the GOL LIGHTNING was improperly positioned when the basket landed. Further, Turner expressly disclaimed that the vessel was drifting when he was injured, attributing the hard landing instead to the vessel's vertical movement with the swell.

Next, although Turner points to evidence that seas were between six and eight feet and that winds were between twenty and twenty-five miles per hour,

---

[35] *Broussard*, 2023 WL 2994777, at *3 (collecting cases).

[36] Doc. 58 at 9; Doc. 55-4.

[37] *Id.*

Turner does not argue that conditions were unsafe for transfer.[38] In fact, Dubois testified that those conditions were acceptable for a personnel-basket transfer. Turner does not present evidence to the contrary.

Finally, Turner argues that "there is a question of fact as to whether a deckhand was present to receive the basket and whether such a crewmember could have prevented the accident."[39] Again, the Court disagrees. Although neither had an independent recollection of the day of the incident, both Dubois and Gordon testified that typically one deckhand assists with vessel transfers. More importantly, as REC points out, the vessel log indicates that there was a deckhand stationed aboard the vessel that day. Turner puts forth no contrary evidence, merely speculation.

Moreover, Turner fails to allege or otherwise establish any act or omission on the part of the deckhand who was presumably present that caused

[38] Notably, "[t]he Fifth Circuit has not held that, as a matter of law, performing *any* ocean operation in six to eight foot seas is not unreasonable. Instead, relevant case law points to different conclusions regarding the reasonableness of sea operations, all depending on the particular conditions and operation to be performed." Shannon v. Rodi Marine, LLC, No. 22-1222, 2024 WL 1073036, at *2 (E.D. La. Mar. 12, 2024) (quoting Champion v. GlobalSantaFe Drilling Co., Civ. A. No. 06-1800, 2008 WL 5273708, at *3, n.2 (E.D. La. Dec. 15, 2008) (Duval, J.)). Here, Turner points to no evidence that the sea conditions rendered the basket transfer unsafe. *Cf. Shannon*, 2024 WL 1073036, at *2 (denying summary judgment where the plaintiff alleged that the captain proceeded in excessively rough conditions and supported that theory with deposition testimony and an expert report). In any event, Turner does not argue that REC Marine was responsible for the decision to operate in those conditions, much less that REC was negligent in proceeding with or failing to stop the transfer. Instead, Turner maintains that Cox controlled the operation. Turner has therefore forfeited any argument that REC Marine was negligent for proceeding in the prevailing sea conditions. *See* Rollins v. Home Depot USA, 8 F.4th 393, 396 (5th Cir. 2021) (finding that the plaintiff forfeited any argument that a factual dispute precluded summary judgment because he never presented it to the district court); *see also* Mosley v. Wood Group PSN, 760 Fed. App'x 352, 361 (5th Cir. 2019) ("Mosley failed to brief this factor and has forfeited any argument that it weighs against borrowed employee status.").

[39] Doc. 58 at 10.

his injury.[40] The only evidence Turner provides is a November 23, 2023 Job Safety Analysis ("JSA"), which he references in relation to Cox. The JSA is relevant insofar as a company safety manual or job-safety analysis, while not alone sufficient to create a legal duty, "informs what constitutes 'ordinary prudence.'"[41] While a JSA may provide circumstantial evidence as to negligence, the failure to conduct one, without more, does not itself establish a breach.[42] Assuming Turner intends to rely on the JSA, he must still identify additional evidence from which a reasonable factfinder could conclude that REC breached its duty of reasonable care and that the breach caused his injury.[43] Turner fails to do so.

The JSA indicates, and Captain Gordon confirmed, that it was the vessel deckhand's responsibility to relay vessel-position communications between the vessel and crane operator, who is in control of the basket. The deckhand was also responsible for managing the tagline attached to the basket. As Turner

[40] Turner asserts that the GOL LIGHTNING should have had two deckhands, rather than one, although he attributes that decision to Cox, rather than REC.

[41] Glaze v. Higman Barge Lines, Inc., 611 F. App'x 227, 228 (5th Cir. 2015).

[42] *See id.* (holding that the plaintiff's Jones Act claim failed because the captain's failure to conduct a JSA did not establish a violation of the standard of care); Lett v. Omega Protein, Inc., 487 F. App'x 839, 844–45 (5th Cir. 2012) (rejecting argument that failure to conduct a job-hazard analysis on a routine task established negligence); Harrison v. Seariver Maritime, Inc., 61 F. App'x 119, 2003 WL 342266, at *7 (5th Cir. 2003) (explaining that "there is no requirement at law that a JSA be conducted, especially for routine tasks").

[43] *Cf.* Martinez v. Offshore Specialty Fabricators, Inc., 481 F. App'x 942 (5th Cir. 2012) (finding that, in Jones Act case, district court did not err in finding that vessel was negligent where the vessel knew that working conditions over which it had control were unsafe and the evidence showed not merely a deficiency in JSA documentation, but also that employees signed a blank JSA, the supervisor failed to complete the required safety analysis until after the work was completed, and the supervisor "should have known that the failure to complete this analysis would increase the risk that an employee would be injured by working in an unsafe fashion").

points out, although the JSA was signed by Cox and Crosby personnel, it was not signed by REC's vessel crew, and neither Captain Gordon nor Dubois specifically recalled the transfer.

Turner provides no evidence that the deckhand present on the day of the incident did not abide by the JSA's protocols or did not otherwise act in a reasonably prudent manner. Rather, Captain Gordon testified that although it was "abnormal" for the vessel crew not to have signed the JSA, that did not mean that the vessel crew did not discuss protocols or fulfill their duties.[44] Further, while Turner emphasizes that none of the GOL LIGHTNING's crew appears to be available to testify, because Turner bears the burden of proof at trial, REC need only point out the absence of evidence supporting an essential element of his claim to satisfy its initial summary-judgment burden.[45]

Finally, Turner urges this Court to follow the District Court for the Western District of Louisiana's decision in *Gannard v. Island Operating Co.*, but that case is distinguishable.[46] In *Gannard*, a basket transfer case also involving REC, the court denied REC's motion for summary judgment after the plaintiff presented evidence that connected the deckhand's specific acts or omissions to the injury.[47] Specifically, the record indicated that REC's deckhand was responsible for ensuring that the crane line had sufficient slack, signaling the crane operator when additional slack was necessary, and warning personnel if wave action rendered the transfer unsafe.[48] The

[44] Doc. 58-4 at 8; Doc. 59-3 at 4.
[45] *See* Hankins v. Wheeler, 109 F.4th 839, 844 (5th Cir. 2024).
[46] No. 6:23-CV-00993, 2026 WL 1662782 (W.D. La. June 9, 2026).
[47] *Id.* at *7.
[48] *Id.* at *6.

deckhand further acknowledged that, if the vessel dropped away from the basket and the line lacked sufficient slack, that would indicate that he had failed to tell the crane operator that more slack was needed.[49]

Likewise, the deckhand acknowledged that it was his responsibility to inform passengers to wait before boarding and to detect dangerous wave conditions and admitted that he was "in a superior position to have awareness of any danger in a lift more than a simple passenger."[50] Significantly, the incident investigation report: (1) identified vessel movement as the "root cause" of the accident, (2) stated that the vessel's movement exceeded the amount of slack in the crane line, and (3) specifically noted that personnel basket communications could have been verbally communicated between the crane operator, captain, and deckhand.[51] Further, the deckhand had never participated in a personnel-basket transfer before the incident and had received no specific training on such transfers.[52] Based on this evidence, the court concluded that a reasonable jury could find that the deckhand failed to communicate the need for additional slack or warn personnel that wave action rendered the transfer unsafe.[53] No comparable evidence exists here.

In sum, the Court finds that Turner fails to present evidence either that REC breached any duty owed to him or "that weather conditions or Captain [Gordon]'s difficulty positioning the vessel for boarding caused his accident."[54] Accordingly, summary judgment is appropriate.

---

[49] *Id.*
[50] *Id.*
[51] *Id.* at *5, *6.
[52] *Id.* at *7.
[53] *Id.*
[54] *Broussard*, 2023 WL 2994777, at *3.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. 55) was granted. Turner's claims against REC Marine are **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana this 21st day of October, 2026.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**